# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MIKIO VANDRUNEN**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**THE PISA GROUP, INC.**, a Missouri corporation, **PLAIN DEALER PUBLISHING CO.**, an Ohio company and **JOHN DOE DEFENDANTS**, real name(s) unknown,<br><br>*Defendants*. | CASE NO.: 4:17-CV-01238<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mikio VanDrunen brings this Class Action Complaint and Demand for Jury Trial against Defendants The Pisa Group, Inc. ("Pisa Group"), Plain Dealer Publishing Co. ("Plain Dealer"), and unknown newspaper companies (the "John Doe Defendants") (collectively the "Defendants"), to stop their practice of making unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Defendant Pisa Group is a telemarketer that partners with newspaper companies—like Plain Dealer and the John Doe Defendants—to bolster their subscription sales and increase their profits.

2. To reach new potential subscribers, Pisa Group made (and continues to make) thousands of autodialed telemarketing calls to consumers' cellular telephones to promote subscription offers for a variety of periodicals.

3. However, neither Pisa Group, nor its newspaper partners, ever obtained consent to make these autodialed telemarketing calls. Indeed, many of the calls made by Pisa Group were "cold calls," given that none of the Defendants had a previous relationship of any kind with the call recipients and, therefore, the calls violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA")

4. The TCPA was enacted to protect consumers from unauthorized and unwanted calls, exactly like the ones alleged in this case. Pisa Group made these autodialed calls despite the fact that neither Plaintiff, nor the other members of the Class and Plain Dealer Subclass, provided Pisa Group, Plain Dealer, or the John Doe Defendants with their prior express written consent to receive them.

5. By making the autodialed calls at issue, or directing such calls to be made, Pisa Group, Plain Dealer, and the John Doe Defendants, have violated the privacy and statutory rights of Plaintiff, the Class, and the Plain Dealer Subclass, and caused them to suffer actual harm by subjecting them to the aggravation that necessarily accompanies the receipt of unauthorized telemarketing calls.

6. Plaintiff therefore seeks an injunction requiring Pisa Group, Plain Dealer, and the

John Doe Defendants to cease all autodialed telemarketing activities, as well as an award of actual and statutory damages to the Class and Plain Dealer Subclass's members, together with costs and reasonable attorneys' fees.

## PARTIES

7. Plaintiff Mikio VanDrunen is a natural person and citizen of the State of Ohio.

8. Defendant The Pisa Group, Inc. is organized and exists under the laws of the State of Missouri with its headquarters located at 2120 Collier Corporate Parkway, St. Charles, Missouri 63303.

9. Defendant Plain Dealer Publishing Co., is organized and exists under the laws of the State of Ohio with its headquarters located at 4800 Tiedeman Road Brooklyn, Ohio 44144.

10. The John Doe Defendants publish and/or sell subscriptions to various periodicals. The John Doe Defendants directed Pisa Group to make the calls at issue on their behalf, and for their benefit. The identity and citizenship of the John Doe Defendants is not known at this time, but is known to Defendant Pisa Group.

## JURISDICTION AND VENUE

11. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12. This Court has personal jurisdiction over Defendant Pisa Group because its principal place of business is in this District and Pisa Group does significant business in this District. Likewise, Plain Dealer and the John Doe Defendants conduct business in this District through their transactions with Pisa Group.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Pisa

Group is registered to do business and regularly conducts business in this District and because the wrongful conduct giving rise to this case occurred in, emanated from, and/or was directed from this District. Venue is further proper in this District because Pisa Group's principal place of business is located in this District.

## COMMON FACTUAL ALLEGATIONS

14. Pisa Group is a nationwide telemarketing company that exclusively conducts newspaper subscription sales and retention telemarketing. Pisa Group has more than 100 newspaper partners throughout the United States—including Plain Dealer and the John Doe Defendants—for which it conducts telemarketing campaigns.[1]

15. As a substantial part of its business, Pisa Group offers these clients outbound "cold calling and telemarketing services" that will purportedly allow them to reach "new customers and increase newspaper subscriptions."[2]

16. Pisa Group places a substantial emphasis on the effectiveness and success of its cold calling campaigns in reaching new customers and utilizing untapped sales potential.[3] As a primary feature, Pisa Group touts that its cold calling campaigns provide "maximum control" over the campaigns to the client.

17. However, Pisa Group's representations fail to address the unfortunate drawback of cold calling campaigns: that neither Pisa Group, nor the clients on whose behalf it makes calls (such as Plain Dealer and the John Doe Defendants), has any prior relationship with the recipients of those calls. Indeed, Pisa Group readily admits that its cold calling campaigns are a

---

[1] *See About Us*, The Pisa Group, Inc., www.thepisagroup.com/about.html (last visited April 3, 2017).

[2] *See Outbound Telemarketing*, The Pisa Group, Inc., http://www.thepisagroup.com/cold-calling.html (last visited April 3, 2017).

[3] *See id*.

method for its clients to reach a "new market" with "new customers."[4]

18.     In other words, Pisa Group explicitly acknowledges that it places calls to consumers who have not given any prior consent to be contacted by any means, and with which Pisa Group and/or its clients have no pre-existing business relationship.

19.     Even when consumers answer and attempt to opt out of future calls, Pisa Group ignores these demands and continues to call.

20.     On information and belief, these calls were made at the direction of Plain Dealer and the John Doe Defendants, on their behalf, and for their benefit.

21.     Plain Dealer is an Ohio based publishing company known for its eponymous newspaper publication. Plain Dealer's newspaper is the major news periodical for the Cleveland area, and boasts the largest circulation of any Ohio newspaper.

22.     Plain Dealer contracted with Pisa Group to secure its telemarketing services—including its cold calling expertise—in order to generate new subscribers and customers for its major newspaper publication "The Plain Dealer."

23.     The John Doe Defendants consist of various local and national publication companies that contracted with Pisa Group to secure its telemarketing services—including its cold calling expertise—in order to generate new subscribers and customers.

24.     Pisa Group made the calls at issue by utilizing an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Pisa Group has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Pisa Group's automated dialing equipment also is, or includes features substantially similar to, a

---

[4]     *See Outbound Telemarketing*, The Pisa Group, Inc., http://www.thepisagroup.com/cold-calling.html (last visited April 3, 2017).

5

predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention). In fact, Pisa Group advertises this ability in the Yellow Pages,[5] as well as on its own website.[6]

25.     These autodialed telephone calls to consumers' cellular telephone numbers constituted commercial advertising and telemarketing as contemplated by the TCPA. Namely, the calls at issue promoted the sale of periodical subscriptions to numerous consumers.

26.     Unfortunately, neither Pisa Group nor its clients—such as Plain Dealer and the John Doe Defendants—acquired the requisite prior express written consent of consumers before bombarding their cellular telephones with autodialed telemarketing calls.

27.     Defendants knowingly made, or directed to be made, these autodialed telemarketing calls to cellular telephones without the prior express written consent of the call recipients. As such, Defendants not only invaded the personal privacy of Plaintiff and other members of the putative Class, but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF MIKIO VANDRUNEN

28.     Beginning in or around December 2016, Plaintiff VanDrunen began to receive autodialed telemarketing calls from Pisa Group on his cellular telephone. Pisa Group placed these calls using telephone number (440) 533-1044.

29.     Plaintiff VanDrunen answered several of the telemarketing calls, whereupon one of Pisa Group's telemarketers would market subscriptions to periodicals offered by Plain Dealer

---

[5]     *See* www.yellowpages.com/saint-charles-mo/mip/pisa-group-8705799. There, under "General Info," Defendant Pisa notes, "[i]ts call centers are equipped with predictive dialers that develop and execute multiple calling campaigns."

[6]     *See Why Choose Us*, The Pisa Group, Inc., http://www.thepisagroup.com/why-choose-us.html (last visited April 3, 2017).

6

or the John Doe Defendants. In other instances, when Plaintiff answered Pisa Group's telemarketing calls, the predictive dialing system used to place the call would immediately terminate the call.

30.     In December 2016, Plaintiff answered one of the telemarketing calls and instructed Pisa Group to stop calling. Nonetheless, Plaintiff still continued to receive additional calls from Pisa Group on his cellular telephone.

31.     Plaintiff never consented in writing—or otherwise—to receive autodialed telephone calls on his cellular telephone from Pisa Group, Plain Dealer, or any of the John Doe Defendants.

32.     Plaintiff does not have a relationship with Pisa Group, Plain Dealer, or the John Doe Defendants, and has never requested that Pisa Group, Plain Dealer, or the John Doe Defendants place autodialed calls of any type to him, let alone to his cellular telephone.

33.     Defendants' intrusive telemarketing calls adversely affected Plaintiff's right to privacy. Defendants were, and are, aware that the above-described autodialed telemarketing calls were being made on a widespread basis, and that the autodialed telemarketing calls were being made to consumers who had not provided their prior express written consent to receive them.

## CLASS ALLEGATIONS

34.     **Class Definitions**: Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself, a class, and a subclass defined as follows:

> **Class**: All individuals in the United States who (1) received a telephone call; (2) on his or her cellular telephone; (3) from an agent or representative of Defendant Pisa Group; (4) that was placed using an automatic telephone dialing system; (5) for the purpose of marketing periodical subscriptions; (6) where Pisa Group did not have a record of prior express written consent to place such a call at the time it was made.

**Plain Dealer Subclass**: All members of the Class who (1) received a telephone call; (2) on his or her cellular telephone; (3) from an agent or representative of Defendant Pisa Group; (4) that was placed using an automatic telephone dialing system; (5) for the purpose of marketing periodical subscriptions to Plain Dealer's periodicals; (6) where neither Pisa Group nor Plain Dealer had a record of prior express written consent to place such a call at the time it was made.

The following people are excluded from the Class and Plain Dealer Subclass (the "Classes"): (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35. **Numerosity**: The exact number of the Classes' members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants have placed telephone calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be identified through Defendants' records.

36. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

8

38. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes' members, and making final injunctive relief appropriate with respect to the Classes as wholes. Defendants' practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

**Class**:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Pisa Group systematically placed autodialed telemarketing calls to individuals who did not provide Defendants and/or their agents with their prior express consent to receive them;

(c) Whether Pisa Group made the calls with the use of an ATDS;

(d) Whether Pisa Group made the calls at the direction and for the benefit of the Plain Dealer and/or the John Doe Defendants;

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

9

  (f)  Whether Pisa Group systematically made telephone calls to consumers after they expressly asked not to be called from Pisa Group.

**Plain Dealer Subclass**:

  (a)  Whether Plain Dealer's conduct violated the TCPA;

  (b)  Whether Plain Dealer had autodialed telemarketing calls placed to individuals who did not provide Plain Dealer or Pisa Group and/or their agents with their prior express consent to receive them;

  (c)  Whether Plain Dealer had the calls made with the use of an ATDS;

  (d)  Whether Pisa Group made the calls at the direction and for the benefit of Plain Dealer;

  (e)  Whether members of the Plain Dealer Subclass are entitled to treble damages based on the willfulness of Plain Dealer's conduct.

40. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

41. Plaintiff reserves the right to modify the foregoing class definition.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
**(On behalf of Plaintiff and the Class as against Pisa Group and John Doe Defendants)**

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. Pisa Group made autodialed telephone calls to Plaintiff's and the Class members' cellular telephones, without having their prior express written consent to do so.

44. Pisa Group's calls were made at the direction of, and on behalf of, the John Doe Defendants for the purpose of marketing subscriptions to newspapers and/or magazines belonging to the John Doe Defendants. The John Doe Defendants directed these calls to be made in order to increase their subscription numbers and, ultimately, their sales revenues.

45. Pisa Group made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Pisa Group utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention. The John Doe Defendants were, and are, aware that these telephone calls are being made at their direction, and on their behalf, using such equipment.

46. By making and/or directing that the autodialed telemarketing calls be made to Plaintiff's and the Class members' cellular telephones without prior express consent, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

47. As a result of Defendants' unlawful conduct, Plaintiff and the Class suffered

11

invasions of their privacy and their statutory rights. As such, under 47 U.S.C. § 227(b)(3)(C), Plaintiff and each Class member are entitled to, *inter alia*, a minimum of $500 in statutory damages (which may be trebled upon a showing of willfulness) for each such violation of the TCPA, as well as an injunction to ensure that Defendants' violations of the TCPA do not continue into the future.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Plain Dealer Subclass as against Plain Dealer)**

48. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49. Pisa Group made autodialed telephone calls to Plaintiff's and the Plain Dealer Subclass members' cellular telephones, without having their prior express written consent to do so.

50. Pisa Group's calls were made at the direction of, and on behalf of, Plain Dealer for the purpose of marketing subscriptions to its print newspaper, "The Plain Dealer." Plain Dealer directed these calls to be made in order to increase its subscription numbers and, ultimately, its sales revenues.

51. Pisa Group made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Pisa Group utilized equipment that made the telephone calls to Plaintiff and other members of the Plain Dealer Subclass simultaneously and without human intervention. Plain Dealer was, and is, aware that these telephone calls are being made at their direction, and on their behalf, using such equipment.

52. By directing that the autodialed telemarketing calls be made to Plaintiff's and the

Plain Dealer Subclass members' cellular telephones without prior express consent, Defendant Plain Dealer violated 47 U.S.C. § 227(b)(1)(A)(iii).

53. As a result of Plain Dealer's unlawful conduct, Plaintiff and the Plain Dealer Subclass suffered invasions of their privacy and their statutory rights. As such, under 47 U.S.C. § 227(b)(3)(C), Plaintiff and each Plain Dealer Subclass member are entitled to, *inter alia*, a minimum of $500 in statutory damages (which may be trebled upon a showing of willfulness) for each such violation of the TCPA, as well as an injunction to ensure that Plain Dealer's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mikio VanDrunen, individually and on behalf of the Class and Plain Dealer Subclass, prays for the following relief:

A. An order certifying the Class and Plain Dealer Subclass as defined above, appointing Plaintiff VanDrunen as the representative of the Classes, and appointing his counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. A declaratory judgment that Pisa Group's telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

D. An injunction requiring Defendants to cease all unauthorized and unlawful uses of automated or computerized telephone calling equipment without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting the interests of the Class and Plain Dealer Subclass;

E. An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of the call

recipients' prior express consent to receive calls made with such equipment, and otherwise protecting the interests of the Class and Plain Dealer Subclass;

  F. An award of actual and statutory damages;

  G. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

  H. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

             Respectfully submitted,

Dated: April 3, 2017       **MIKIO VANDRUNEN**, individually and on behalf of all others similarly situated,

             By: /s/ Benjamin H. Richman
               One of Plaintiff's Attorneys

             Benjamin H. Richman
             brichman@edelson.com
             EDELSON PC
             350 North LaSalle Street, 13th Floor
             Chicago, Illinois 60654
             Tel: 312.589.6370
             Fax: 312.589.6378

             Rafey Balabanian
             rbalabanian@edelson.com
             Eve-Lynn Rapp
             erapp@edelson.com
             Edelson PC
             123 Townsend, Suite 100
             San Francisco, California 94107
             Tel: 415.212.9300
             Fax: 415.373.9435

             Attorneys for Plaintiff and the Classes